# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2024 WY 134A

*October Term, A.D. 2024*

**December 12, 2024**

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

GAYLA K. AUSTIN, WSB #6-4397,

Respondent.

D-24-0005

## NUNC PRO TUNC
## ORDER OF TEN-MONTH SUSPENSION

[¶1]     **This matter** came before the Court upon a Report and Recommendation for Order of Ten-Month Suspension to be Effective March 1, 2024, filed herein November 6, 2024, by the Board of Professional Responsibility for the Wyoming State Bar, pursuant to Rule 16 of the Wyoming Rules of Disciplinary Procedure.  The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court, and that Respondent Gayla K. Austin should be suspended from the practice of law for ten-months.  It is, therefore,

[¶2]     **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Order of Ten-Month Suspension to be Effective March 1, 2024, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]     **ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the Report and Recommendation for Order of Ten-Month Suspension to be Effective March

1, 2024, Gayla K. Austin shall be suspended from the practice of law for ten months, with the period of suspension to retroactively begin March 1, 2024; and it is further;

[¶4]     **ADJUDGED AND ORDERED** that, during the period of suspension, Respondent shall comply with the requirements of the Wyoming Rules of Disciplinary Procedure, particularly Rule 21 of those rules.  That rule governs the duties of disbarred and suspended attorneys; and it is further

[¶5]     **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Ms. Austin shall reimburse the Wyoming State Bar the amount of $3,842.50, representing the costs incurred in handling this matter, as well as pay the administrative fees of $1,500.00.  Ms. Austin shall pay the total amount of $5,342.50 to the Wyoming State Bar on or before December 23, 2024.  If Ms. Austin fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶6]     **ORDERED** that the Clerk of this Court shall docket this Order of Ten-Month Suspension, along with the incorporated Report and Recommendation for Order of Ten-Month Suspension to be Effective March 1, 2024, as a matter coming regularly before this Court as a public record; and it is further

[¶7]     **ORDERED** that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Ten-Month Suspension, along with the incorporated Report and Recommendation for Order of Ten-Month Suspension to be Effective March 1, 2024, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶8]     **ORDERED** that the Clerk of this Court cause a copy of this Order of Ten-Month Suspension to be served upon Respondent Gayla K. Austin.

[¶9]     **DATED** this 12th day of December, 2024.

**BY THE COURT:***

/s/

**KATE M. FOX**
**Chief Justice**

*Justice Jarosh took no part in consideration of this matter

IN THE SUPREME COURT
STATE OF WYOMING
FILED

NOV - 6 2024

SHAWNA GOETZ, CLERK

by DEPUTY

**BEFORE THE SUPREME COURT**

**STATE OF WYOMING**

| | |
|---|---|
| *In the matter of* | ) |
| *GAYLA K. AUSTIN,* | ) |
| *WSB # 6-4397,* | ) |
| | ) |
| *Respondent.* | ) |

*WSB Nos. 2024-012 and 2024-058*

**D - 24 - 0005**

## REPORT AND RECOMMENDATION FOR ORDER OF TEN-MONTH SUSPENSION TO BE EFFECTIVE MARCH 1, 2024

THIS MATTER came before a Hearing Panel of the Board of Professional Responsibility for hearing on October 16, 2024. Hearing Panel members John C. Brooks (Chair), Bradley T. Cave and Brett McPeak were present, as were Mark W. Gifford, Bar Counsel, Gayla K. Austin, Respondent, and her counsel, Seth D. Shumaker. The Hearing Panel, having heard the testimony of witnesses, having received voluminous exhibits and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS as follows:

### FINDINGS OF FACT

1. Respondent Gayla Austin was admitted to the Wyoming State Bar in 2009. On November 16, 2023, the Wyoming Supreme Court issued an order suspending Austin from the practice of law for 60 days commencing January 1, 2024. The court ordered Respondent to reimburse the Wyoming State Bar $4,316.06 in costs and $750.00 in administrative fees, for a total of $5,066.06 to be paid on or before March 1, 2024. The court assigned docket number D-23-004 to the case.

2. The Wyoming Rules of Disciplinary Procedure require suspended attorneys to notify clients of their suspension:

> An attorney against whom an order of disbarment, suspension, or transfer to disability inactive status has been entered shall promptly notify in writing by

1

certified mail each client whom the attorney represents in a matter still pending of the order entered against the attorney and of the attorney's consequent inability to act as an attorney after the effective date of such order, and advising such client to seek legal services elsewhere.

*See* Rule 21(b).

3.   Suspended lawyers are further required by Rule 21(d) to file an affidavit with the Supreme Court "setting forth a list of all pending matters in which the attorney served as counsel" and provide other information relative to the suspension.

4.   On December 15, 2023, Respondent filed her Rule 22(d) affidavit in which, pertinent to the present matter, she identified, "Estate of David M. Weir Second Judicial District PR 2021-0025" as one of Respondent's pending matters. Attached to Respondent's Rule 21(d) affidavit, among other things, was a copy of a letter from Respondent to Dylan Weir.

5.   On January 29, 2024, the Office of Bar Counsel received a report from Judge Dawnessa Snyder that Austin had filed a pleading in a probate matter in Judge Snyder's court, in which filing Respondent identified herself as "Attorney for the Estate of David M. Weir."

6.   The filing of said pleading constitutes the practice of law as defined by Rule 7(b) of the Rules Governing the Wyoming State Bar and the Authorized Practice of Law:

> "Practice law" means providing any legal service for any other person, firm or corporation, with or without compensation, or providing professional legal advice or services where there is a client relationship of trust or reliance, including appearing as an advocate in a representative capacity; drafting pleadings or other documents; or performing any act in a representative capacity in connection with a prospective or pending proceeding before any tribunal.

7.   At 11:25 a.m. on Monday, January 29, 2024, Bar Counsel sent the following inquiry to Respondent:

> Dear Ms. Austin,
>
> The Office of Bar Counsel has received notice from Judge Dawnessa Snyder that you filed the attached pleading in a Second Judicial District probate matter on

2

January 24, 2024, during your current disciplinary suspension. We have initiated an investigation pursuant to Rule 10 of the Rules of Disciplinary Procedure.

Please provide a written explanation for your conduct in this regard (email is fine) by the close of business Monday, February 5, 2024. Please address in your response whether the conduct in question could be deemed to violate Rules 3.4(c) and 5.5 of the Rules of Professional Conduct. Also, please provide copies of all documents pertaining to this matter which you are required to maintain pursuant to Rule 21(d)(3) and (f) of the Rules of Disciplinary Procedure.

8. The docket number assigned to the Office of Bar Counsel's (OBC) investigation of the report from Judge Snyder is BPR 2024-012.

9. Rule 3.4(c) provides, "A lawyer shall not *** knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Rule 5.5(a) provides in relevant part, "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction." The Panel finds that Respondent's conduct in filing a pleading in Judge Snyder's court during Respondent's disciplinary suspension is a per se violation of Rules 3.4(c) and 5.5(a).

10. At 4:48 p.m. on Monday, February 5, 2024, Bar Counsel received an email from Respondent which stated, "Pursuant to 4.2 of the Rules of Professional Conduct my counsel will communicate with you directly; I am instructed by that counsel to request an extension of 30 days to respond to your 1.29.2024 11:24 a.m. message." Bar Counsel immediately responded via email, "I will not agree to an extension to respond to what is a very straightforward inquiry."

11. On Monday, February 12, 2024, having heard nothing from Respondent nor her unnamed attorney, Bar Counsel filed a petition for immediate suspension and supporting affidavit with the Wyoming Supreme Court pursuant to Rule 17(a), W.R.Disc.P., on the grounds that Respondent was not cooperating with Bar Counsel's inquiry and appeared to have engaged in the unauthorized practice of law by filing a pleading in Judge Snyder's court while

3

she was suspended. Bar Counsel emailed a copy of the filed-stamped petition and affidavit to Respondent the same day. Pursuant to Rule 17(b)(2), Respondent was obligated to file a response to the petition for immediate suspension by February 27, 2024. She filed nothing.

12. On February 28, 2024, the Wyoming Supreme Court issued an order denying the petition for immediate suspension, to which the Court assigned docket number D-24-0001.

13. On March 7, 2024, Bar Counsel submitted a request for authority to file a formal charge against Respondent to the ROC as required by Rule 10(f). On the same day, Bar Counsel provided Respondent with the notice required by Rule 10(g)(2). That notice alerted Respondent to the fact that Bar Counsel had requested authority to file a formal charge and that, pursuant to Rule 10(g)(2), Respondent had 10 days from the date of service of such notice to submit any information to the ROC. Also served by mail and email upon respondent was a copy of the Office of Bar Counsel's investigative file bearing Bates numbers OBC-001 through OBC-052.

14. On March 8, 2024, the Wyoming State Bar received Respondent's check for administrative fees and costs related to the suspension proceeding in the amount of $5,066.06. The check was received one week later than the March 1, 2024, deadline for payment set forth in the Supreme Court's order of 60-day suspension.

15. Pursuant to Rule 22(a), upon completion of the 60-day suspension (on or about March 1, 2024), Respondent was eligible for immediate reinstatement upon filing a Rule 22 Affidavit with the Supreme Court containing certain required information, including a showing that "the attorney has complied with all requirements of the Court's disciplinary order." However, as of March 1, 2024, Respondent had not yet paid her administrative fee and costs as ordered by the Supreme Court. In addition, Respondent had apparently violated the Court's order by engaging in the practice of law during her suspension, which was the subject of the

4

inquiry sent by Bar Counsel to Respondent on January 29, 2024. Nor had Respondent cooperated with Bar Counsel's inquiry by providing a response to same.

16. On March 14, 2024, Denver attorney David Kaplan submitted an application for pro hac vice admission to the Wyoming State Bar. The same day, Admissions Director Cathy Duncil issued a Rule 8 Certificate confirming Kaplan's compliance with Rule 8 of the Rules Governing the Wyoming State Bar and the Authorized Practice of Law, a prerequisite to gaining pro hac vice admission for Kaplan to represent Respondent in proceedings before the Board of Professional Responsibility.

17. Also on March 14, 2024, Respondent attempted to return from "disciplinary suspended" to "active" status by filing an Affidavit for Reinstatement Pursuant to Wyoming Court Rule 22 with the Wyoming Supreme Court. Respondent filed her affidavit in the wrong disciplinary proceeding, D-24-0001, the docket number assigned to Bar Counsel's petition for immediate suspension, instead of D-23-0004, the docket number assigned to Respondent's 60-day disciplinary suspension.

18. In her Rule 22 affidavit, Respondent testified that she was current on the payment of all annual license fees; was current on her continuing legal education requirement; and that there had been no claims or award made on the Client Protection Fund. However, with respect to the fourth requirement of Rule 22(a) that the affidavit must show "compliance with all aspects of the Court's disciplinary order," Respondent testified,

> I am aware that Bar Counsel for the Wyoming State Bar has initiated an investigation into whether I inappropriately submitted a pleading contrary to the requirements of this suspension giving rise to an allegation of the unauthorized practice of law. I am responding to this accusation under the processes provided by the Wyoming Rules of Disciplinary Procedure. This matter has yet to be decided. In all other respects, I have complied with the requirements of the Court's disciplinary order.

5

19. Upon review of Respondent's Rule 22 affidavit, on March 15, 2024, Bar Counsel sent the following email to Kaplan:

As you may be aware, Ms. Austin filed her affidavit seeking reinstatement yesterday (copy attached). There are two problems with the affidavit. First, it was filed in the wrong proceeding (D-24-0001 instead of D-23-0004). The more problematic aspect of the affidavit is that it does not comply with Rule 22(a). Rule 22(a)(4) requires an affidavit which shows the attorney "has complied with all requirements of the Court's disciplinary order." The affidavit filed by Ms. Austin is missing this critical piece. Accordingly, at this juncture we are unable to return her to active status.

20. Kaplan replied as follows:

Thanks for the heads up on the proceeding designation, that will be corrected. I helped Ms. Austin with the affidavit that is required for reinstatement and was trying to be accurate without ignoring the pending concern. I do not think it is inaccurate to acknowledge an outstanding matter without confessing to a violation when it is proceeding in an appropriate procedural manner. A determination of having failed to comply with the disciplinary order, and any possible sanction, has not yet been established. You have mentioned that this is a circumstance, if not ever seen, certainly unique. I suggest the better way to proceed is to grant her return and let this new allegation run its course. This is bolstered by the Court's refusal to grant your *Petition for Immediate Suspension of Attorney* on the new allegation.

21. Bar Counsel replied:

I understand that you are trying to finesse your way through a difficult situation. Melinda [McCorkle, Deputy Bar Counsel] and I have considered whether there is any way to return Ms. Austin to active status though her affidavit does not comply with Rule 22(a). We just don't see it. The rule doesn't leave us the option of saying, in effect, the affidavit is "close enough."

22. On March 19, 2024, the Review and Oversight Committee (ROC) authorized Bar Counsel to bring a formal charge. The original formal charge was filed with the Clerk of the Board of Professional Responsibility (BPR) on March 22, 2024.

23. On April 25, 2024, the OBC received a complaint against Respondent from Mary Willoughby, an Oklahoma resident who hired Respondent on or about April 23, 2024, to handle the probate of Ms. Willoughby's father's estate. On April 24, 2024, Respondent submitted a

representation agreement to Ms. Willoughby, which Ms. Willoughby signed and returned the following day.

24.    On or about April 25, 2024, after she had signed the engagement agreement and advanced funds to cover the cost of administration of the estate to Respondent, Ms. Willoughby discovered that Respondent was still under a disciplinary suspension. She immediately submitted a complaint to the OBC, to which docket number BPR 2024-058 was assigned.

25.    On April 25, 2024, Bar Counsel sent a letter to Respondent, enclosing a copy of Ms. Willoughby's complaint (and attachments) and advising that an investigation was being initiated for possible violations of Rules 5.5, 8.4(b) and 8.4(c) by Respondent in undertaking representation of Ms. Willoughby while Respondent was under a disciplinary suspension. Bar Counsel requested a written response on or before May 16, 2024. The docket number assigned to the OBC's investigation of the complaint from Ms. Willoughby is BPR 2024-058.

26.    On April 29, 2024, Ms. Willoughby reported:

> I would like to let you know and add to my complaint. Ms. Austin is now harassing me via the Cheyenne Police Department. She called them and reported that I stole a vehicle. I received a call from a private number asking for my personal information ie; name, DOB and address. I called the police department and asked to speak to Officer Rodriguez supervisor. I informed him of her practicing law under a suspended license. He believes her license is in good standing because of the information on the Wyoming Bar Association website. I informed him that her license has not been reinstated. I informed him that said car is locked in my father's garage and that she is simply harrassing [sic] me.

Bar Counsel subsequently obtained a copy of the Incident Report for Respondent's call, which indicates that Respondent, who identified herself as the attorney for the estate, told police that Ms. Willoughby, who was in Cheyenne to attempt to settle her father's estate, was "Driving a veh that belongs to the estate, no title for it, no right to drive it." Respondent testified that she made the report to the police because Ms. Willoughby was driving her father's vehicle without

7

first obtaining a court order authorizing it. Ms. Willoughby testified that she was driving her father's car in order to attend to the administration of his estate for which she had traveled from Oklahoma to Cheyenne by airlines.

27. By letter dated May 13, 2024, Respondent submitted a written response to the investigation of Ms. Willoughby's complaint. In her response, Respondent stated:

> Bar Counsel,
>
> On or about April 25, 2024, I received a phone call from Ms. Mary Willoughby regarding a probate matter involving her father. I made no attempt to procure her as a client and did not know her before the phone call.
>
> The conversation involved probate in Wyoming. I informed her I am not taking clients at this time.
>
> I had been out of town and upon return, and after checking my lock box, realized she had mistakenly left documents in the lockbox that is outside my office. Before I could contact her and apprise her of the mistake, she contacted me upset over information concerning my suspension. Fearful that anything I said could be misinterpreted, I directed her to call Mr. Kaplan who was representing me on outstanding discipline matters. I thereafter immediately made arrangements for the return of her items. She appeared at my office and received the paperwork and payment she had provided.
>
> Out of an abundance of caution I have asked my website to be taken down.
>
> I am not representing anyone at this time, as a result of the continuing suspension.
>
> I have not violated the rules of discipline by engaging in the unauthorized practice of law (Rule 5.5) did not commit a criminal act (Rule 8.4(b)) nor was dishonest or deceitful (Rule 8.4(c)). I have not violated rules based on my dealings with Ms. Willoughby, at worse it was a misunderstanding surrounding our communication.

28. Respondent's implicit representation that she did not enter into an attorney-client relationship with Ms. Willoughby is demonstrably untrue. In fact, among the documents provided to Respondent with Bar Counsel's letter of inquiry was the signed engagement agreement. This conduct by Respondent constitutes a violation of Rule 8.1(a), which prohibits a lawyer from knowingly making a false statement of material fact in connection with a bar disciplinary matter.

8

29.     In the course of these proceedings, Respondent wrote and signed an affidavit which included the following with respect to Ms. Willoughby's complaint:

> OnWSB2024-058, I was not suspended when Mary Willoughby contacted me regarding her father's estate in April 2024. However, I declined to take her case because on inquiry with the Cheyenne Police Department, Mary Willoughby is driving the estate car with intent to take it out of state which is not allowed under the American Bar Association rules, the Wyoming probate code and Wyoming case law.

Respondent's representation that she declined to take Ms. Willoughby's case was demonstrably untrue and constitutes a separate violation of Rule 8.1(a).

30.     Bar Counsel met his burden of proving by clear and convincing evidence Respondent's violations of Rules 3.4(c), 5.5 and 8.1(a) as set forth above.

31.     Bar Counsel did not prove the alleged violations of Rule 8.1(b), 8.4(b) and 8.4(c) by clear and convincing evidence. Accordingly, those charges are dismissed.

32.     Applying the ABA's Standards for Imposing Lawyer Discipline (the "ABA Standards") to the foregoing violations, the Panel finds that Respondent's conduct in violating Rule 3.4(c) constituted abuse of legal process as set forth in ABA Standard 6.2. The Panel finds that the presumptive sanction for Respondent's misconduct is a suspension.

33.     Applying the ABA Standards to Respondent's violations of Rules 5.5(a) and 8.1(a), the Panel finds that Respondent violated duties owed as a professional as set forth in Standard 7.0. The Panel finds that the presumptive sanction for Respondent's misconduct is a suspension.

34.     Regarding Respondent's mental state in committing the foregoing violations, the Panel finds that Respondent acted knowingly if not intentionally.

9

35.     Regarding the potential or actual injury caused by Respondent's conduct, the Panel finds that Respondent caused actual or potential injury to the legal system and the profession.

36.     Regarding aggravating and mitigating factors the panel finds the following aggravating factors: (1) a prior disciplinary offense; (2) dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple offenses; (5) submission of false statements during the disciplinary process; (6) refusal to acknowledge the wrongful nature of Respondent's conduct; and (7) substantial experience in the practice of law.

37.     Mitigating factors are (1) personal or emotional problems and (2) imposition of other penalties or sanctions (i.e., Respondent's remaining on disciplinary suspended status during the pendency of these proceedings).

38.     The Panel finds that a ten-month suspension effective March 1, 2024, is an appropriate sanction for Respondent's misconduct.

## CONCLUSIONS OF LAW

39.     Rule 3.4(c), W.R.Prof.Cond., provides, "A lawyer shall not: *** (c) knowingly disobey an obligation under the rules of the tribunal except for an open refusal based on the assertion that no valid obligation exists."

40.     Rule 5.5(a), W.R.Prof.Cond., provides, "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so."

41.     Rule 8.1(a), W.R.Prof.Cond., provides in pertinent part, "[A] lawyer in connection with *** a disciplinary matter, shall not: (a) knowingly make a false statement of material fact."

10

46.     Rule 15(b)(3)(D), Wyo.R.Disc.Proc., provides, "In imposing a sanction after a finding of misconduct by the respondent, the Hearing Panel shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions, which standards shall be applied by the Hearing Panel in determining the appropriate sanction:

(i)      Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;

(ii)     Whether the lawyer acted intentionally, knowingly, or negligently;

(iii)    The actual or potential injury caused by the lawyer's misconduct; and

(iv)    The existence of any aggravating or mitigating factors."

47.     The American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA Standard 3.0 lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct and mirrors the language of Rule 15(b)(3)(D), Wyo.R.Disc.Proc.:

(a) the duty violated;

(b) the lawyer's mental state;

(c) the potential or actual injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

48.     First Factor: The Duty Violated. Respondent's violations of Rule 3.4(c) (knowing failure to comply with an order of the tribunal) fall under Standard 6.2:

6.2   *Abuse of the Legal Process*

11

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious claim, or failure to obey any obligation under the rules of the tribunal except for an open refusal based on an assertion that no valid obligation exists:

6.21 Disbarment is generally appropriate when a lawyer knowingly violates a court order or a rule with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

6.23 [Public censure] is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

6.24 [Private reprimand] is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.

49. Respondent's violation of Rule 5.5 (unauthorized practice of law) and Rule 8.1(a)

(failure to cooperate with Bar Counsel) falls within ABA Standard 7.0 (Violation of Duties

Owed as a Professional), which provides:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from misrepresentation, or failure to report professional misconduct.

7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public or the legal system.

12

7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

7.3 Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

7.4. Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system.

50. Second Factor: The Lawyer's Mental State. The Preface to the ABA Standards includes the following discussion regarding mental state:

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

51. Third Factor: Actual or Potential Injury. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

52. Fourth Factor: Aggravating and Mitigating Factors. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

13

## 9.1 *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

## 9.2 *Aggravation*

9.21 *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22 *Factors which may be considered in aggravation.* Aggravating factors include:

    (a) prior disciplinary offenses;
    (b) dishonest or selfish motive;
    (c) a pattern of misconduct;
    (d) multiple offenses;
    (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
    (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
    (g) refusal to acknowledge wrongful nature of conduct;
    (h) vulnerability of the victim;
    (i) substantial experience in the practice of law;
    (j) indifference in making restitution; and
    (k) illegal conduct, including that involving the use of controlled substances.

## 9.3 *Mitigation.*

9.31 *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32 *Factors which may be considered in mitigation.* Mitigating factors include:

    (a) absence of a prior disciplinary record;
    (b) absence of a dishonest or selfish motive;
    (c) personal or emotional problems;
    (d) timely good faith effort to make restitution or to rectify consequences of misconduct;
    (e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

   (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

   (2) the chemical dependency or mental disability caused the misconduct;

   (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

   (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

9.4     *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating nor mitigating:

   (a) forced or compelled restitution;

   (b) agreeing to the client's demand for certain improper behavior or result;

   (c) withdrawal of complaint against the lawyer;

   (d) resignation prior to completion of disciplinary proceedings;

   (e) complainant's recommendation as to sanction; and

   (f) failure of injured client to complain.

53.     Assessment of costs. Rule 25, W.R.Disc.Proc. provides:

(a) The expenses of members of the BPR, the ROC, Bar Counsel, and Special Bar Counsel, costs of a Disciplinary Judge, and other expenses incurred in the implementation or administration of these rules, shall be paid with funds allocated for that purpose by the Wyoming State Bar. The Wyoming State Bar shall compensate and pay the expenses of Disciplinary Judges.

(b) In addition to any costs assessed by the BPR, the ROC or the Court, an administrative fee of seven hundred fifty dollars ($750.00) shall be imposed by the BPR in all cases where private discipline, diversion, or public discipline is ordered. The administrative fee shall be assessed on a per-complaint basis.

15

(c) "Costs" means actual expenses incurred by Bar Counsel, the ROC, the BPR, and the Wyoming State Bar in connection with a disciplinary proceeding, reinstatement proceeding or diversion program, including without limitation the cost of depositions used in a proceeding, hearing transcripts, copying costs, conference call and other telephone expenses, fees for service of process and subpoenas, witnesses fees, fees paid to expert witnesses, and costs associated with travel, meals and lodging for the ROC, the BPR, the BPR Clerk and the Office of Bar Counsel.

(d) When an attorney is privately disciplined, the BPR or the ROC may assess against the attorney the costs incurred in connection with the investigation and disciplinary proceeding, together with the administrative fee.

(e) When public discipline is recommended by the BPR, it shall certify to the Court the costs incurred in connection with the investigation and disciplinary proceeding, together with the administrative fee. The BPR may recommend to the Court the assessment of those costs and, if the Court imposes discipline, the Court may assess all or any part of the certified costs, together with the administrative fee, against respondent.

(f) In any case where costs and fees are assessed, they shall be paid to the Wyoming State Bar.

## **RECOMMENDATION**

Based upon the foregoing findings of fact and conclusions of law, the Hearing Panel recommends that the Court:

1.      Issue an order of ten-month suspension of Respondent effective March 1, 2024.

2.      Order Respondent to pay an administrative fee of $1,500.00 ($750.00 for each complaint) as well as properly certified costs of this proceeding to the Wyoming State Bar.

Dated this 25th day of October, 2024.

John C. Brooks
Hearing Panel Chair
Board of Professional Responsibility
Wyoming State Bar

16